# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3355 | DATE | 6/21/2001 |
| CASE TITLE | Scavenger Sale Investors vs. Robert Anthony Bryant | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to re-open the action [64-1] is granted. Plaintiff's motion to enter judgment pursuant to the agreement [64-2] is denied. Plaintiff's motion to strike the affidavit of David Word [66-1] is denied. Plaintiff's motion to depose David Word [66-2] is granted. Defendant's emergency motion for leave to deposit tendered funds [68-1] and for return of collateral [68-2][68-3] is granted in part and denied in part.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 22 2001 date docketed | 23 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 6/20/2001 | |
| | Copy to judge/magistrate judge. | 01 JUN 21 PM 3: 43 | date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCAVENGER SALE INVESTORS L.P., an Arizona Limited Partnership, ) ) ) | No. 99 C 3355 |
| Plaintiff ) ) | Magistrate Judge Morton Denlow |
| vs. ) ) | |
| ROBERT ANTHONY BRYANT, a/k/a TONY BRYANT, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scavenger Sale Investors L.P.'s ("Investors"/"Plaintiff") has filed a motion to re-open and enter judgment against Defendant Robert Anthony Bryant ("Bryant"/"Defendant"), pursuant to a stipulation entered as part of a settlement agreement between the parties. Plaintiff loaned Defendant $1,752,685.38 pursuant to the Loan Agreement dated July 8, 1997. The parties entered into a settlement agreement to satisfy the loan obligation after the Defendant defaulted on the loan and this lawsuit to collect was begun.

Plaintiff now moves the court to (1) re-open the action pursuant to the Court's Order entered on May 4, 2000, and (2) enter the judgment order, attached as Exhibit C to the settlement agreement, in favor of Plaintiff and against Defendant. For the reasons stated below, Investor's motion to re-open the action is granted and the motion for entry of the

judgment order attached as Exhibit C to the settlement agreement is denied.

# I. BACKGROUND FACTS

## A. The Parties

This case was previously before the Court in connection with Plaintiff's motion for summary judgment on the issue of liability. *Scavenger Sale Investors L.P., v. Bryant*, 2000 WL 360118 (N.D.Ill.). The background facts leading up to the settlement agreement are taken from that decision. *Id.*

Investors is an Arizona limited partnership, of which David B. Zlotnick and Albert M. Zlotnick are general partners. The partnership was formed for the limited purpose of funding a loan to Bryant in order to purchase tax certificates at the 1997 Cook County, Illinois Scavenger Sale of Tax Delinquent Property. None of the general or limited partners is a citizen of Illinois.

Bryant is a citizen of Illinois and is in the business of buying tax certificates at the bi-annual Cook County, Illinois Scavenger Sale for Tax Delinquent Property through his company Tax Sale Investments ("TSI"). During the Scavenger Sale, the Cook County Treasurer's office conducts a public auction from which buyers can purchase tax certificates corresponding to the delinquent taxes owed on various real estate properties throughout the county. The buyer receives a return on his purchase in one of two ways: (1) the owner of the delinquent property has six months to pay the tax owed plus interest and redeem the tax certificate from the buyer, or (2) if the owner does not redeem the tax certificate, the purchaser of the tax certificate receives a deed to the property from the county granting clear

title, enabling the deed holder to sell the property.

**B. Loan Agreement**

On July 8, 1997, Albert M. Zlotnick and David B. Zlotnick (collectively "the Zlotnicks") entered into a Loan Agreement ("Loan Agreement") with Bryant in which the Zlotnicks agreed to loan Bryant up to $2,000,000 for the purpose of financing Bryant's purchase of tax certificates at the 1997 Cook County Scavenger Sale. The Loan Agreement also provided for an annual interest rate of 40%, with all principal and interest due on or before December 21, 1998. (Loan Agreement at p.4 ¶ 5).

After Bryant defaulted on the Loan Agreement, litigation ensued to collect on the loan. Investors moved for summary judgment and this Court granted Investors' motion on the issue of liability on March 22, 2000. *Bryant*, 2000 WL 360118 (N.D.Ill.).

**C. Settlement Agreement**

Rather than proceed to trial on the issue of damages, the parties entered into the Settlement Agreement ("Agreement") dated April 19, 2000. The Agreement provided a form of judgment in the amount of $1,600,000 plus accrued interest at the rate of 15 percent per annum from April 18, 2000. (Ex. C to Agreement, "Judgment"). The Agreement further provided the Judgment would not be entered in the event Bryant complied with one of two options to repay the settlement amount. However, in the event Bryant did not complete one of the payment options, the Judgment would be entered against him. On May 4, 2000, this Court entered an order dismissing the litigation with prejudice and retaining jurisdiction, by consent of the parties, through May 4, 2001 for the purpose of enforcing settlement.

Therefore, under the Agreement, Bryant faced three options. The first option ("Option 1") was to permit a judgment to be entered in the amount of $1,600,000 plus interest. The second option ("Option 2") was to repay a reduced amount equal to $1,000,000 plus $30,000 representing Investors attorney's fees and interest of 12%. This option required payments of $100,000 immediately, and $75,000 per month every 30 days, with the first payment due on May 18, 2000 and a single payment equal to the balance of the Settlement Amount due no later than January 19, 2000. (Agreement at p.3 ¶3). The third option ("Option 3") required Bryant to pay $900,000 on or before June 13, 2000, with credit for payments made subsequent to the date of the Agreement. (Agreement at p.3 ¶4). Bryant elected to proceed under Option 2.

The Agreement further provides:

"If Bryant defaults on any obligation under this Agreement, Bryant hereby consents to entry of the Judgment in the form of Exhibit C, regardless of the payments made pursuant to this Agreement. Moreover, in the event of default, Bryant hereby completely and irrevocably waives any and all defenses whatsoever to complete disclosure of his business and personal finances, including any defenses to proceedings for citation to discover assets..." (Agreement at p.4 ¶8)

"Time is of the essence in connection with this Agreement. Without limiting the scope of Bryant's obligations pursuant to this Agreement, any failure by Bryant to make any payment or payments as required under this Agreement by 5:00 p.m., Chicago time, on the date said payment is due shall constitute a default under this Agreement, entitling SSILP [Investors] to remedies for default." (Agreement at p. 5 ¶12).

**D. Non Payment**

Pursuant to the Agreement, Bryant owed Investors approximately $1,600,000; however, he could discharge that obligation under Option 2 by paying a reduced Settlement

4

Amount of $1,030,000 plus interest. (Agreement at p.1 ¶3). Timely payments were made from May 18, 2000 to October 20, 2000. However, Bryant did not make timely payments of the required $75,000 on November 20, 2000 or December 20, 2000. Specifically, Bryant paid $25,000 on November 21, 2000 (one day late), a further $15,000 on November 27, 2000 (seven days late), and $40,003 on December 4, 2000 (fourteen days late). (Ex. D to Pl.'s Motion to Re-open at p.1 ¶2).

Subsequently, Investors brought a motion to re-open the action to enforce the Agreement. Thereafter, Bryant again did not make the required payment of $75,000 on December 20, 2000. Rather, Bryant paid $20,000 on December 21, 2000 (one day late) and $55,000 on January 3, 2001 (fourteen days late). (Supp. Decl. of Storm at p.2 ¶7). Finally, pursuant to the Agreement, Bryant was required to complete his payment of the settlement obligation no later than January 19, 2001 with a single payment equal to the balance of the settlement amount. Bryant made no such payment. (Supp. Decl. of Storm). The balance of the Settlement Amount on January 19, 2001 was $273,400.74 according to the escrow agent's bookkeepers. (Ex. 2 to Supp. Decl. of Storm at p.2-3 ¶10).

### E. Post - Settlement Communications Between the Parties

Bryant asserts in his affidavit that he held at least two telephone conversations with Albert Zlotnick, principal and partner of Plaintiff, regarding the terms of the Agreement and that the parties agreed to reduce the monthly payments from $75,000 per month to $50,000 per month effective in January, 2001. (Ex. 1 to Df.'s Response to Pl.'s Motion to Re-open at p.1 ¶3). The Agreement provides that "any amendment or modification of this Agreement

5

must be in writing and signed by the parties." (Agreement at p.6 ¶18). No written modification was ever signed by the parties.

The written correspondence indicates Investors sent a draft amendment to the Agreement ("Amendment 1") on January 22, 2001 to which Bryant did not respond. (Ex. E to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1).

Thereafter, Investors sent a second letter on February 5, 2001 emphasizing time was of the essence and that the Plaintiff's would like a response to Amendment 1. (Ex. F to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). Bryant responded and rejected Amendment 1 indicating the balance was more than the parties had discussed in their prior telephone conversations. (Ex. G to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). Thereafter, Investors sent a second revised amendment to the Agreement ("Amendment 2") on February 5, 2001 addressing Bryant's concerns and reducing the amount to be paid. (Ex. H to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). Bryant rejected Amendment 2 while acknowledging that the Plaintiff could obtain and record a judgment against him "for millions", but reiterated he was unable to pay due to lack of funds. (Ex. I to Pl.'s Reply Memo to Support the Motion to Re-open p.1 ¶1).

Subsequently, Investors sent a third revised amendment to the Agreement ("Amendment 3") on February 7, 2001 to which Bryant did not respond. (Ex. J to Pl.'s Reply Memo to Support the Motion to Re-open p.1 ¶1). On March 20, 2001, Investors wrote Bryant and informed him that because the terms of Amendment 3 were not complied with, as Bryant never provided Investors with sworn financial statements and never formally

6

agreed to the Amendment, Investors would give Bryant one more chance to comply with Amendment 3 by March 26, 2001. (Ex. K to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). However, the letter specifically stated that if the conditions were not adhered to, Investors would request to re-open the litigation and seek entry of the Judgment pursuant to the default provision of the Agreement. (Ex. K to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1).

Bryant responded on March 26, 2001 and rejected the terms of Amendment 3 because the balance to be paid was more than he deemed appropriate and he offered to litigate the matter. (Ex. L to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). Finally, on March 27, 2001, Investors replied to Bryant's response and again offered a final, revised amendment to the Agreement ("Amendment 4") pointing out that if Bryant did not agree to Amendment 4, Investors would ask the Court to enter the Judgment pursuant to the original Agreement. (Ex. M to Pl.'s Reply Memo to Support the Motion to Re-open p.1 ¶1).

Thereafter, on April 19, 2001, Bryant rejected the terms of Amendment 4 and stated he would do "whatever then appears necessary to conclude this matter as we agreed in our phone conversations over the past several months." (Ex. N to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). In response, Investors wrote Bryant and stated that because Bryant was unwilling to constructively address the situation, the Plaintiff had no other alternative but to proceed to make a motion to re-open the action and request the Court to enter Judgment pursuant to the Agreement. (Ex. O to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). Subsequently, Bryant wrote to Investors offering "to tender

tomorrow, May 11, at your [counsel's] office, full payment of the outstanding balance owed your client as reflected in the April 30 'Supplemental Declaration' that you filed with the Court." (Ex. P to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1) Bryant also stated because Storm declined to supply a corrected total due as of April 30, 2001, he "had an accountant calculate the total owed your client as of tomorrow, May 11. That total is $141,113.60." (Ex. P to Pl.'s Reply Memo to Support the Motion to Re-open at p.1 ¶1). Plaintiff then filed a Second Supplemental Declaration to update the statement of payments and remaining balance which now stood at $141,895.84 as of May 21, 2001. (Ex.4 to Second Supp. Decl. of Storm).

### F. Motions in Dispute

Now before the Court are three motions. First, the Plaintiff made a motion for the Court to re-open the action and to enter judgment pursuant to the Agreement. Second, the Plaintiff moved the Court to enter an order striking the Affidavit of David Word or, in the alternative, to enter an order granting Plaintiff leave to depose David Word. Finally, the Defendant made an emergency motion for leave to deposit tendered funds and for return of collateral, or for other relief.

## II. ANALYSIS

### A. Choice of Law

The Loan Agreement states the agreement shall be governed by the substantive law of the state of Arizona. (Loan Agreement p.7 ¶15). The Court held in the earlier proceeding that Arizona law "governs the substantive legal issues in this case." *Bryant*, 2000 WL 360118

8

(N.D.Ill.).

The Defendant argues that *Checkers Eight Ltd. Partnership v. Hawkins*, 241 F.3d 558 (7th Cir. 2001), applying Illinois law controls disposition of this case. However, the April 19, 2000 Agreement at issue contains no choice-of-law provision.

However, regardless of whether Illinois or Arizona law applies, the rule of law is substantially similar. Therefore, it is not necessary for this Court to decide which law applies because the result is identical. Where the law of two jurisdictions is essentially the same on a disputed point, there is no need to apply a choice of law analysis. *Wreglesworth v. Artco, Inc.*, 738 N.E.2d 964, 969 (Ill. App. Ct. 2000).

## B. Jurisdiction

The Order entered on May 4, 2000 dismissing the action with prejudice pursuant to a settlement of all matters in controversy provides that, by consent of the parties, the Court shall retain jurisdiction of the action through May 4, 2001, for the purpose of enforcing the Agreement. (Pl.'s Motion to Re-open p.1 ¶1). On April 23, 2001, an agreed order was entered by which the Court was to retain jurisdiction to enforce the settlement through December 31, 2001. The parties further consented in the motion hearing on June 5, 2001 that the Court shall have jurisdiction to resolve all issues in relation to the Agreement.

## C. The Default Provision is an Unenforceable Penalty

The principal issue before the Court is whether the Agreement contains an unenforceable penalty by reason of the proposed Judgment. Whether a contractual provision is a valid liquidated damages clause or a penalty clause is a question of law. *Grossinger*

9

*Motorcorp Inc. v. American Nat'l Bank & Trust Co.*, 607 N.E.2d 1337 (Ill. App. Ct. 1992). Illinois courts resolve doubtful cases in favor of classification as a penalty. *Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1146 (7th Cir. 1998).

The Defendant argues Illinois law governs the case at hand and therefore, the controlling case is *Checkers*. However, as the Court noted above, it is irrelevant whether Illinois or Arizona law governs as the rule of law is substantially similar in both jurisdictions. *Gary Outdoor Advertising Co. v. Sun Lodge Inc.*, 650 P.2d 1222 (Ariz. 1982) ("...when a contractual provision dictates a fixed sum for damages regardless of the actual harm that occurs, the provision must be construed as penal in nature.").

This Court will follow the test as set out in *Checkers*. *Checkers* provides a clause is a liquidated damages provision and not a penalty if (1) the actual damages from a breach are difficult to measure at the time the contract was made; and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach. *Checkers*, 241 F.3d at 562. Additionally, when the sole purpose of the clause is to secure performance of the contract, the provision is an unenforceable penalty. *Id.*

The default provision in the Agreement is an unenforceable penalty because it calls for the entry of an additional Judgment in the amount of $1,600,000 plus interest, without credit for any payments made under Option 2. In the case at hand, the Defendant acknowledged he owed Plaintiff $1,600,000 in the Agreement. (Agreement at p.1 ¶3). However, the Defendant has made payments of approximately $888,104.16 to date. (Ex.4 to Second Supp. Decl. of Storm). The default provision as written in the Agreement does not allow for credit for any

settlement payments.[1]

Specifically, the Agreement provides:

"If Bryant defaults on any obligation under this Agreement, Bryant hereby consents to entry of Judgment in the form of Exhibit C, *regardless of the payments made pursuant to this Agreement.*" (Agreement at p. 4 ¶8) (emphasis added).

Such a provision is a penalty because no credit is given for any settlement payments. Had the Agreement provided that the default judgment amount would equal $1,600,000 less the payments already made under the Agreement, it would present an entirely different situation.

Furthermore, the specified default Judgment amount is not reasonable in light of the anticipated or actual loss caused by the breach. The Agreement purports to have this Court enter a Judgment for $1,600,000 plus 15 percent interest from April 18, 2000 (Df's Response to Pl's Motion for Entry of Judgment at p. 2 ¶5), while the remaining balance under option 2 of the Agreement is only $141,895.84. (Ex. 4 to Second Supp. Decl. of Storm). Thus, under the Agreement, the Defendant would be required to pay an additional $1,600,000, without regard to prior payments made.

Finally, the provision as written is to secure performance of the contract and is therefore an unenforceable penalty. This Court must "look to see the nature and the purpose of fixing the amount of damages to be paid, and if it appears to have been inserted to secure the prompt performance of the agreement, it will be treated as a penalty and no more than

---

[1] Although the Plaintiff agreed in the motion hearing on June 5, 2001 in Court to credit the prior settlement payments against the Judgment if entered against the Defendant, the Court is interpreting the Agreement as drafted.

11

actual damages proved can be recovered." *Raffel*, 139 F.3d at 1146 (*quoting Advance Amusement Co. v. Franke*, 109 N.E.2d 471, 472 (Ill. 1915). Requiring the Defendant to pay such a large amount upon the occurrence of a default, regardless of the remaining balance, is designed for the sole purpose of ensuring Defendant's performance.

Portions of court-approved agreements can constitute unenforceable penalties if they fail the test outlined above. *Checkers*, 241 F.3d at 561. Illinois courts consistently invalidate damages provisions in contracts that fail the test even if both parties are economically sophisticated. *Id.* at 563. In the case at hand, both parties are sophisticated and agreed to the Agreement provision at issue, however, such provision fails the test and is thus an unenforceable penalty provision. Therefore, the Plaintiff's motion for entry of the judgment order is denied.

At this time, the Court is not determining the consequences of the default on behalf of the Defendant. Rather, the Court's opinion is limited to the ruling on the Plaintiff's motion to re-open the action and for entry of the judgment order.[2]

### D. The Motion to Strike David Word's Affidavit is Denied and Plaintiff's Motion to Depose Affiant is Granted

In David Word's affidavit, he states that he overheard at least two telephone conversations held by the Defendant and the Plaintiff regarding the terms of the Agreement.

---

[2]Therefore, it is beyond the scope of this opinion to determine whether the Agreement was orally modified or whether the Defendant is liable for a maximum of $1,600,000 plus interest, less payments to date, or $1,030,000 plus interest, less payments to date.

The circumstances surrounding the alleged conversations are unclear. Therefore, the Court is granting the Plaintiff's motion to depose David Word to determine the nature and relevancy of the conversations to the issue at hand. In addition, the Plaintiff's motion to strike David Word's affidavit is denied.

### E. Defendant's Emergency Motion for Leave to Deposit Tendered Funds and for Return of Collateral is Granted in Part

To prevent wasting the collateral, the Court orders the Plaintiff to accept funds tendered from the Defendant and to release the tax sale certificates held as collateral in accordance with paragraph 6 of the Agreement. However, the Court denies Defendant's motion to deposit tendered funds with the Court.

Plaintiff holds as collateral a substantial number of tax sale certificates which will expire in July and August, 2001. Reclaiming the value of these certificates which may qualify for sale-in-error status will require timely analysis, marshaling of evidence and filing and prosecution of the necessary court proceedings in the Circuit Court of Cook County. As a result of the importance of timing in relation to the tax sale certificates, the Court orders the Plaintiff to accept tendered funds by the Defendant and return the tax sale certificates held as collateral pursuant to the terms and conditions in the Agreement.

## III. CONCLUSION

For the foregoing reasons, **Plaintiff's motion to re-open the action is granted. Plaintiff's motion to enter Judgment pursuant to the Agreement is denied. Plaintiff's motion to strike the Affidavit of David Word is denied. Plaintiff's motion to depose David Word is granted. Defendant's emergency motion for leave to deposit tendered funds and for return of collateral is granted in part and denied in part.**

SO ORDERED THIS 21ST DAY OF JUNE, 2001.

*Morton Denlow*

**MORTON DENLOW**
**United States Magistrate Judge**

Copies Delivered in Open Court or Mailed To:

Timothy J. Storm
Storm & Gottesman
Suite 3400
30 North LaSalle Street
Chicago, Illinois 60602

Attorney for Plaintiff

Rufus Cook
Cook & Revak, Ltd.
1626 E. 74th Street
Chicago, Illinois 60649

Patrick H. Smyth
105 West Madison
Suite 2300
Chicago, Illinois 60602

Attorneys for Defendant